EDWARDS *et al. vs.* WORLEY.

70 667<br>98 387

[This case was argued at the last term, and the decision reserved ]

1. A will, after leaving certain specific legacies and providing that testator's debts should be paid before distribution, contained the following items: "Item 1. * * * My will is that, at the same time the above distribution is made, that my daughter, Sarah A. E. Edwards, have a negro woman loaned to her during her life, and then to the children of her body; said negro and what may subsequently fall to her in settlement with her mother, or final settlement at her mother's death, all to go into the hands of John Rich, trustee for Sarah A. E. Edwards'.

"Item 3. My will and desire is that my beloved wife, Sarah Rich, have the whole of the balance of my estate, both real and personal, during her natural life or widowhood, and at her death I give and bequeath the whole estate to my five children, to them and their

v 70–43

heirs forever, except Sarah A. E. Edwards in trust as above described; but if my wife should marry, my will is that on her intermarriage that my property be equally divided between my wife and five children, to them and their heirs forever, except Sarah A. E. Edwards, as before excepted.

"Item 6. My will is that my son, John Rich, take charge of all the property falling to Sarah A. E. Edwards, and manage the same for the benefit of her and her children; and if he should die before she does, or before a settlement with the children, that in that case the court of ordinary appoint a successor to settle the same ":

*Held,* that the property devised by the third item of such will, so far as it concerned the testator's daughter, did not pass for her use for life with remainder to her children, but she and her children occupied the position of tenants in common as to one share of the property to be divided at the death of testator's wife. Such share was to be held in trust, and the children were entitled to a settlement when in law, by reason of being of full age, they could demand it.

2. Under the facts of this case, if the original sale of realty passing under the third item of testator's will was illegal, a prescriptive title in favor of the present holder has nevertheless ripened, and a verdict for the defendant was demanded by the evidence. Therefore, even though some errors may have been committed at the trial, the verdict will not be disturbed.

February 13, 1883.

Wills. Estates. Title. Prescription. Verdict. Before Judge POTTLE. Elbert Superior Court. March Term, 1882.

Reported in the decision.

M. R. STANSELL; JOHN T. OSBORN; PHIL. DAVIS, for plaintiffs in error.

W. M. & M. P. REESE; JOHN P. SHANNON, for defendant.

CRAWFORD, Justice.

1. The plaintiffs below brought their action of complaint against the defendant to recover six hundred and fifty acres of land. The questions of law controlling the case arise upon the construction of the will of Wm. Rich,

from which it is claimed that the title of the plaintiffs springs. The material parts of which will are as follows :

" Item 1. * * * My will is that, at the same time the above distribution is made, that my daughter, Sarah A. E. Edwards, have a negro woman loaned to her during her life, and then to the children of her body ; said negro and what may subsequently fall to her in settlement with her mother, or final settlement at her mother's death, all to go into the hands of John Rich, as trustee for Sarah A. E. Edwards.

" Item 3. My will and desire is that my beloved wife, Sarah Rich, have the whole of the balance of my estate, both real and personal, during her natural life or widowhood; and at her death, I give and bequeath the whole of my estate to my five children, to them and their heirs forever, except Sarah A. E. Edwards in trust as above described; but if my wife should marry, my will is that on her intermarriage, that my property be equally divided between my wife and children, to them and their heirs forever, except Sarah A. E. Edwards as before excepted.

" Item 6. My will is that my son, John Rich, take charge of all the property falling to Sarah A. E. Edwards, and manage the same for the benefit of her and her children ; and if he should die before she does, or before a settlement with the children, that in that case the court of ordinary appoint a successor to settle the same."

The land in controversy was that which, under the will, constituted the balance of the estate referred to in the third item thereof, and given to Mrs. Sarah Rich, the wife of the testator, for life or widowhood, and then to the sons absolutely, and to Sarah A. E. Edwards in trust, as above therein described. The record shows that in 1845, two years after the probate of the will, Sarah Rich and David A. Rich, executors of William Rich, executed to U. O. Tate, a warranty deed to four hundred acres of the land belonging to the estate of the said William Rich, at and for the sum of twelve hundred dollars. An agreement is also shown by which James, William, and David A. Rich, the sons of the testator, and Sarah A. E. Edwards, the daughter, consented that the executors might sell all the land and enough of the negroes to pay the debts of the testator. This agreement bears date July 25, 1845. On the 21st of August, 1845, in consideration of $2,100, James,

William, David and Sarah Rich, and Sarah A. E. Edwards, as legatees under the will of William Rich, Sr., conveyed to the said Tate seven hundred acres more of the land of the estate. In November, 1845, William Rich, Jr., in consideration of $1,200, relinquished and conveyed to said Tate all his interest in the estate of his father, William Rich, deceased.

On December 31, 1847, in consideration of $500, David A. Rich, executor of William Rich, conveyed to said Tate two hundred acres more of the said land. John F. Edwards, trustee for Sarah A. E. Edwards, on May the 8th, 1848, in consideration of $600, relinquished to said Tate all interest in the property held jointly by him as trustee with the said Tate, and which appears to cover all the land of the said William Rich, deceased.

There was much testimony offered on each side, which need not be further stated, in view of the questions of law which must govern the case.

The pleas of defendant were the general issue, title by prescription, and statute of limitations, and an equitable plea, setting up good faith and the payment of the debts of the deceased with the purchase money paid for the land.

The jury returned a verdict for the defendant, and the plaintiffs moved for a new trial, upon several grounds, the controlling one of which is the construction of the will of William Rich, by the court, in the charge to the jury. He held, and instructed the jury, that the meaning of the will was that Mrs. Edwards, the mother and grandmother of the plaintiffs, took as tenant in common with her children, after the death of her mother, and did not take a life estate in the property, with remainder over to her children.

The testator, by the first item of his will, in clear, unmistakable language, gives to his daughter, Mrs. Edwards, a life estate in the negro woman which she was to have, with remainder over to her children, but as to that which she was to receive from the division to be made at the

death of the mother, and which is now in controversy, there are no words creating a life estate in her, or remainder over to the children. Had he said, "and what may subsequently fall to her in settlement with her mother, or in final settlement at her mother's death, all to go to her in like manner," or used any words having such import, then there would have been no question as to the creation of the life estate in her, with remainder over. But after creating the life estate clearly and unmistakably as to the negro woman, he simply provides that the balance which might fall to her should go into the hands of John Rich, as her trustee, without even the usual words excluding the marital rights of the husband, or extending the benefits of the trust, in this item, to any one else than his said daughter.

By the third item of the will, he directs a division of this particular property between his sons absolutely, and in trust as above described. This is but a repetition of the language used in the first-item of the will touching this same property, and which he directs, at the mother's death, to go into the hands of John Rich, as trustee for Sarah A. E. Edwards. There are no words creating a life estate with remainder over in this item as to this property, and the mere use of words for the enforcement of a trust will not create such estates.

The sixth item of this will directs that the trustee manage the property falling to Sarah A. E. Edwards, and manage the same for her benefit and that of her children. It was made his duty also to settle with the children, and if he died before the mother or before a settlement, the ordinary was to appoint a successor to settle with them. Can this duty, put upon the trustee, change the character of the estate, and create a life estate and remainder over, where none is made by the will? The property now in dispute is the very property referred to as falling to Mrs. Edwards from her mother, at the time of her death, in final settlement, and which was to have gone into the hands of the trustee, and to have been managed by him for the

benefit of herself and her children. The benefits to be enjoyed from the management of this property were immediate and in common, whilst the settlement with them was to take place whenever in law they were authorized to demand, by reason of their being of full age, such settlement.

The very words used will would seem to indicate the possibility of a settlement before the death of Mrs. Edwards ; they are, that if he should die before she does, or before a settlement with the children, then, etc., thus making the settlement with the children before his own death the matter to be attended to, and that not to be necessarily dependent upon the mother's death. But whether this be so or not, the failure of the testator to use words creating a remainder as to the land and other property falling in this division to his daughter, and confining these words only to the negro woman loaned to his daughter for life, does not authorize us by doubtful constructions to create such an estate.

The only estate which these children can take in this property, under the will of their grandfather, would be as tenants in common with their mother. See 3 Kelly, 201 ; 29 *Ga.*, 403, 494 ; 35 *Id.*, 4 ; 43 *Id.*, 327 ; 49 *Id.*, 410 ; 55 *Id.*, 505 ; 62 *Id.*, 253.

Construing, then, as we do, that Mrs. Edwards and her children were tenants in common in the property which was to have been divided at the death of Mrs. Sarah Rich, and that they were entitled to have the same as they severally arrived at age according to their respective interests therein, then it necessarily follows that there was no error in the judge's charge on this branch of the case.

2. This ruling controls the case, and settles the rights of all the parties thereto, when taken in connection with the facts as they appear by the record.

Mrs. Sarah Rich died in 1847, at which time her life tenancy in the property left her by her husband terminated, and whatsoever of interest, right, or title there was

in said property belonging to Mrs. Edwards was recover-able. Her husband, who had been appointed her trustee, died in 1850, leaving her a *feme sole.* She lived until 1872, twenty-two years thereafter, without any suit to re-cover the property. John F. Edwards, one of the plain-tiffs in this suit, had been of full age over twelve years when the suit was instituted. Sarah Colquitt, another of the plaintiffs, had been of full age fourteen years, and had been *sui juris,* under the act of 1866, twelve years before the commencement of the action. Mary Skinner, whose minor children, also, are suitors as the representatives of their deceased mother, had been of full age over twelve years at the time of her death, and had brought no suit.

Thus it appears that these parties, being under no disa-bilities, slept over their rights after they had accrued from twelve to fourteen years, and until whatever right of ac-tion they may have had was lost by reason of the prescrip-tive title acquired by those who held and occupied ad-versely, even if such had not been lost long before. For it will be remembered that this land had been sold for a valuable consideration, and without any proof of actual notice to the first purchaser for more than thirty years, and this with the knowledge and consent, and receipt of payment by the trustee, as well as of those representing the estate of William Rich. And even conceding that that sale was illegal, the defendant and those holding sub-sequently thereto under the first purchaser, had them-selves been in *bona fide* possession for about twenty years before any one sought to contest their title.

We hold, therefore, that even though some errors may have been committed at the trial, yet, as the evidence, under the law, demands the verdict, we will not disturb it.

Judgment affirmed.